**Merdell BEAMON et al., Plaintiffs,**

v.

**W. B. SAUNDERS COMPANY et al., Defendants.**

Civ. A. No. 75–2250.

United States District Court,
E. D. Pennsylvania.

April 27, 1976.

Andrew Price, Obermeyer, Rebmann, Maxwell & Hippel, Philadelphia, Pa., for plaintiffs.

Warren Laddon, Morgan, Lewis & Bockius, Mark Dichter, Philadelphia, Pa., for defendants.

## MEMORANDUM AND ORDER

FULLAM, District Judge.

Mrs. Merdell Beamon, the plaintiff herein, is a 53-year old Black woman. From April 1969, through June 20, 1972, Mrs. Beamon was employed by W. B. Saunders Company (Saunders) as an "office cleaner."

On June 20, 1972, Mrs. Beamon's employment with Saunders was terminated, apparently for excessive absenteeism.

On the date of her discharge, Mrs. Beamon filed a complaint with the Philadelphia Regional Office of the Equal Employment Opportunity Commission (EEOC or Commission), alleging that Saunders had "discriminated against [me] because of my race, Negro." The EEOC investigated the charge, and made a determination that reasonable cause existed to believe that Saunders had violated the applicable provisions of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* (Title VII) Thereafter, EEOC attempted conciliation between Mrs. Beamon and her employer, but those efforts were unsuccessful.

On February 6, 1975, the Commission wrote to Mrs. Beamon, informing her that its conciliation efforts had failed. In pertinent parts, the letter stated that:

"This is to advise you that our efforts to settle your case have been unsuccessful. The respondent has failed to make a good faith effort to resolve the following issues: This charge, reinstatement and lost wages.

"If you wish to pursue the matter further, you have the right to sue the Respondent in the United States District Court in Philadelphia. *If you decide to sue, you must submit a written request to this office for a Notice of Right to Sue.*" (Emphasis supplied.)

However, the February 6, 1975, letter did not end EEOC's involvement in Mrs. Beamon's case. Pursuant to EEOC's internal operating procedures, Mrs. Beamon's complaint was referred to the Commission's Philadelphia Regional Litigation Center, for review as a possible case for EEOC-initiated litigation against Saunders. On April 21, 1975, the Commission determined that Mrs. Beamon's charge was an "inappropriate" case for Commission litigation. After receiving notice of EEOC's decision, plaintiff requested her "Notice of Right to Sue" letter, which was issued by the Commission on May 12, 1975, and received on May 15,

1975. This notice provided, in pertinent part that:

"The Commission has determined that it will not bring a civil action against the respondent(s) and accordingly is issuing this Notice of Right to Sue. The issuance of this notice terminates the Commission's processing of your charge, except that the Commission may seek status as an intervenor if you decide to sue on your own behalf as described below.

"If you want to pursue your charge further, you have the right to sue the respondent named in this case in the United States District Court for the area where you live. If you decide to sue, you must do so within ninety (90) days from the receipt of this notice; otherwise your right is lost."

On August 5, 1975, plaintiff initiated this employment discrimination suit against W. B. Saunders Company, on behalf of all Blacks and women similarly situated as Saunders employees. The Complaint alleges that Saunders engaged in employment discrimination on the basis of race and sex. Also named as defendants are the corporate defendant's President, T. van den Beemt, the company's Personnel Director, Dale Cummings, and one of the company's foremen and supervisors, Donald Bryson. Jurisdiction over the cause of action asserted is based on Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*; the Civil Rights Act of 1866, 42 U.S.C. § 1981; the Equal Pay Act, 29 U.S.C. § 206(d); the Thirteenth and Fourteenth Amendments to the United States Constitution; and 28 U.S.C. §§ 2201 and 2202. The defendant has filed a motion to dismiss, arguing that: (1) this Court lacks subject matter jurisdiction; and (2) the Complaint fails to state a claim upon which relief may be granted. The defendant's motion to dismiss raises various complex legal issues, which will be discussed separately.

I. *Was This Action Commenced within the Time Period Prescribed by Title VII of the 1964 Civil Rights Act?*

This exact issue has been the subject of extensive analysis in numerous decisions filed over the last several years. The problem of interpretation arises in the context of attempts to square EEOC's internal operating procedures with the mandate of § 706(f)(1) of Title VII, 42 U.S.C. § 2000e–5(f)(1), which provides, *inter alia* :

"If a charge filed with the Commission . . . is dismissed by the Commission, or if within [180] days from the filing of such charge . . . the Commission has not filed a civil action under this section . . . , or the Commission has not entered into a conciliation agreement to which the person aggrieved is a party, the Commission, . . . shall so notify the person aggrieved and within [90] days after giving such notice a civil action may be brought against the respondent named in the charge by the person claiming to be aggrieved. . . . "

The defendant argues, and submits extensive case law in support of the proposition, that the 90-day period for the commencement of a civil action under Title VII, as provided for in § 706(f)(1), commences with receipt of the first letter which notifies the charging party that conciliation efforts have been unsuccessful.[1] If this legal theory is correct, Mrs. Beamon's Title VII claim would be barred, since more than 90 days have elapsed between her receipt of the notice of failure of conciliation (February 6, 1975) and her filing of this civil action (August 5, 1975). The plaintiff counters by arguing, and citing an equally impressive line of cases in support of the proposition that, § 706(f)(1)'s 90-day limitation period should be measured from the date the "notice of right to sue" letter is received, rather than the date of receipt of the "notice of failure of conciliation."[2] The

1. *See Wilson v. Sharon Steel Corp.*, 399 F.Supp. 403 (W.D.Pa.1975); *Kelly v. Southern Products Co.*, 10 F.E.P. 1221 (N.D.Ga.1975); *Mungen v. Choctaw, Inc.*, 402 F.Supp. 1349, 10 F.E.P. 1345 (W.D.Tenn.1975); *Barfield v. ARC Security, Inc.*, 10 F.E.P. (N.D.Ga.1975); *Brad-*

*shaw v. Zoological Society*, 10 F.E.P. 1369 (S.D. Cal.1975); *Whittom v. ITT Cannon Electric*, 395 F.Supp. 492, 10 F.E.P. 1307 (D.Conn.1975).

2. *See, e. g., Williams v. Southern Union Gas Co.*, 529 F.2d 483, 12 F.E.P. 5 (10th Cir. 1976);

plaintiff's argument in this respect is supported by the EEOC, which has intervened in this suit as *amicus curiae.* Under the theory advanced by EEOC and Mrs. Beamon, the Complaint would have been timely filed, since the law suit was initiated on August 5, 1975, within 90 days after receipt of the May 12, 1975 Notice of Right to Sue letter.

There is a clear split of authority on this issue. Unfortunately, the Court of Appeals for the Third Circuit has yet to reach this issue, and the district courts in this Circuit have taken inconsistent positions with respect to interpretation of § 706(f)(1). *Compare Doman v. SKF Industries, Inc., supra* (90-day limitation period runs from receipt of the notice of right to sue letter) with *Wilson v. Sharon Steel Corp., supra* (90-day limitation period runs from receipt of the notice of failure to conciliate letter). Although I am confident that this precise issue will be clarified in the near future, the Congressional mandate that Title VII actions be processed expeditiously mitigates against staying this decision on the motion to dismiss pending a definitive ruling by the appellate courts.

 Initially, I agree with the views expressed by Judge Wisdom in *Reeb v. Economic Opportunity Atlanta, Inc.,* 516 F.2d 924 (5th Cir. 1975), to the effect that the 90-day requirement found in § 706(f)(1) "is not 'jurisdictional' in the sense that compliance with it *vel non* determines the jurisdiction of the district court, without respect to any of the other circumstances in a particular case." *Reeb v. Economic Opportunity Atlanta, Inc., supra,* at 928.[3] However, this leaves open the question of whether the facts presented in this case warrant a finding that the limitations period found in § 706(f)(1) has been complied with. Without rehashing the extensive analysis of § 706(f)(1) set forth in the reported decisions,[4] I align this Court with those decisions which have held that litigants, especially those proceeding *pro se,* should not be stripped of their Title VII cause of action simply because they were misled by EEOC's confusing, if not unlawful, "two-letter" procedure. *Williams v. Southern Union Gas Co., supra ; Lacy v. Chrysler, supra ; Tuft v. McDonnell Douglas, supra ; DeMatteis v. Eastman Kodak Corp.,* 511 F.2d 306 (2d Cir. 1975). Support for this decision can be found in two separate lines of cases. First, there are those cases which have held that the Commission's "two-letter" procedure "does not violate the provisions of § 706(f)(1), and that the 90-day limitation within which the complaining party [has] a right to sue [does] not commence until the complaining party actually [receives] the formal 'notice of right to sue' letter." *Williams v. Southern Union Gas Co., supra ; Lacy v. Chrysler, supra ; Tuft v. McDonnell Douglas, supra.* Second, there is the line of cases which holds that even if the Commission's "two-letter" system is found to be unlawful, it would be inequitable and would frustrate the remedial purpose of Title VII to hold that Mrs. Beamon's Title VII claim is lost as a result of her voluntary compliance with EEOC's internal procedures. *DeMatteis v. Eastman Kodak Corp., supra ; Taylor v. Pacific Intermountain Express,* 394 F.Supp. 72 (N.D.Ill.1975).

*Lacy v. Chrysler Corp.,* 533 F.2d 353, 44 U.S. L.W. 2432 (8th Cir. 1976) (en banc); *Tufts v. McDonnell Douglas Corp.,* 517 F.2d 1301 (8th Cir. 1975); *Doman v. SKF Industries, Inc.,* 399 F.Supp. 716 (E.D.Pa.1975).

**3.** In *Reeb v. Economic Opportunity Atlanta, Inc., supra,* Judge Wisdom's analysis of § 706(f)(1) correctly focused on the fact that Title VII is essentially remedial legislation which "is entitled to the benefit of liberal construction." Speaking for the Panel, Judge Wisdom stated that:

"We accept the view that the requirement [in § 706(f)(1)] should be analogized to stat-utes of limitations. Equitable modifications, such as tolling and estoppel, that are applied to them should also be applied here. The Act contemplates that complaints initiating EEOC proceedings will be brought in the first instance by laymen. It is reasonable, therefore, for courts to refuse to apply technical rules of common law pleading to charges filed initially with the Commission." *Reeb v. Economic Opportunity Atlanta, supra,* at 928.

**4.** *See,* specifically, *Tuft v. McDonnell Douglas, supra; Doman v. SKF Industries, Inc.; Wilson v. Sharon Steel Corp., supra; Lacy v. Chrysler Corp., supra.*

Both of these lines of cases set forth thoughtful analyses of § 706(f)(1), and without deciding which line of cases is correct, I reach the following conclusions: (1) the Commission's administrative processes are not complete until conciliation has proven unsuccessful and the Commission has determined not to litigate the case on behalf of the charging party; (2) the statutory purpose of the "right to sue" letter is to inform the lay charging party that the suit filing period has begun to run; and since the February 6, 1975 letter did not provide such information, and in fact stated that suit could not be initiated until a second document was obtained, it certainly did not serve the purpose intended by Congress; (3) it would be unfair to find that a lay person such as Mrs. Beamon, who is unassisted by counsel, should have foreseen that she had to bring suit within 90 days after receiving the February 6 "notice of failure to conciliate" letter, especially since the February 6 letter never mentioned the 90-day limitation period, and since the agency charged by Congress with interpretation and enforcement of the Act specifically advised plaintiff otherwise;[5] (4) even if EEOC's two-letter procedure was held to be an unlawful extension of a Congressionally-mandated jurisdictional limitation, that finding should be given only prospective application, since applying that ruling retroactively would clearly conflict with the spirit of the Congressional enactment.

My view is that the equities of the situation warrant the conclusion that Mrs. Beamon should be permitted to litigate her Title VII claim in this proceeding. The motion to dismiss for failure to comply with § 706(f)(1) will be denied.

5. At some point, the parties should develop the factual record with respect to the relationship between EEOC, Mrs. Beamon, and Saunders from the time Mrs. Beamon's employment was terminated until the time the Complaint herein was filed. Specifically, the record should reflect whether EEOC informed Mrs. Beamon that her case was being processed for possible

## II. The Defendant's Motion to Dismiss Plaintiff's Sex Discrimination Claim for Lack of Subject Matter Jurisdiction

The defendant also argues that this Court lacks jurisdiction over plaintiff's sex discrimination claim because this claim was not presented to EEOC. When Mrs. Beamon went to the Commission, she filled out an EEOC information sheet setting forth the nature of her discrimination claim. On one line of the information sheet, the Commission sought to identify the form of discrimination alleged, and the instructions on that sheet directed the charging party to "check one" of the boxes marked: "Race or Color," "Religious Creed," "National Origin," or "Sex." Mrs. Beamon marked only the box entitled "Race or Color." The defendant's argument is that since Mrs. Beamon did not check the "Sex" box in Paragraph 2 of the EEOC charge, she is precluded from raising the issue of sex discrimination at this time.

The plaintiff concedes that "there has developed a body of case law which appears to restrict the allegations contained in a civil complaint under Title VII to those matters investigated by the EEOC or which are reasonably related to the original charge filed with the EEOC." A review of the reported decisions on this point certainly supports the correctness of this analysis. *Jiron v. Sperry Rand Corp.,* 10 F.E.P. 730 (D.Utah 1975); *EEOC v. Rexall Drug Corp.,* 10 F.E.P. 450 (E.D.Mont.1974). The purpose of insisting that employment discrimination claims be processed through EEOC, before reaching the federal court, is to inform the defendant employer of the scope of the action, so that the employer can make an informed decision with respect to settlement and conciliation. While I recog-

EEOC litigation, and whether the Commission specifically informed Mrs. Beamon not to request her "right to sue" letter until the EEOC litigation decision was made. These factual considerations may become relevant in the event that the law applicable to this issue is changed by subsequent appellate decisions.

nize the importance of pursuing the goal of voluntary compliance through conciliation, the record before me does not justify dismissing this sex discrimination claim for failure to present the charge to the EEOC.

First, the issue cannot possibly be resolved in a motion to dismiss, since the crucial inquiry is a factual one involving whether EEOC, in fact, had notice of, investigated, and attempted conciliation with respect to Mrs. Beamon's allegations of sex discrimination by Saunders. The fact that Mrs. Beamon never checked the "Sex" box is of no particular import, especially since the EEOC information sheet specifically instructed charging parties to "check one" box; leaving Mrs. Beamon in the unenviable position of having to choose between her race and sex claims. In fact, the *Jiron* case, which forms the cornerstone of defendant's argument on this issue, specifically states that the claims in the *Jiron* complaint were dismissed, for failure to present the charge initially to the EEOC, only after the Court found that there was no "actual investigation by either the state agency or the EEOC" as to the validity of these claims.

■ Second, since the reason for insisting that discrimination claims first be presented to EEOC is to facilitate meaningful settlement negotiations with the employer, it would appear that the civil complaint should not be dismissed for failure to present this claim to EEOC, unless or until Saunders can offer some proof (1) that it had no knowledge that Mrs. Beamon was pursuing, or intended to pursue, a sex discrimination claim against Saunders; (2) that if Saunders had notice of this sex discrimination claim, this knowledge would have somehow affected their settlement posture; and (3) that Saunders would be prejudiced or adversely affected by allowing Mrs. Beamon to pursue her sex discrimination claim as a matter of first impression

**6.** Although it is not necessary to reach this issue now, it is arguable that the subject matter jurisdiction of the United States District Court in a Title VII action is not limited to those

in this Court. *See Reeb v. Economic Opportunity Atlanta, supra,* at 928.

As was stated by the Third Circuit in *Wetzel v. Liberty Mutual Ins. Co.,* 511 F.2d 199, 202 (3d Cir.1975), vacated for want of an appealable order, —— U.S. ——, 96 S.Ct. 1202, 47 L.Ed.2d 435 (1976), "the rights of a private party [in a Title VII action] must not be barred by procedural technicalities if Title VII is to operate effectively." Assuming that plaintiff failed to present these claims to EEOC, I find that this oversight is merely a "procedural technicality," unless or until the defendant can prove otherwise.[6] For the reasons expressed above, plaintiff's Title VII sex discrimination claim will not be dismissed for lack of subject matter jurisdiction.

### III. Defendant's Motion to Dismiss Plaintiff's Claims under the Civil Rights Act of 1866, 42 U.S.C. § 1981

■ In employment discrimination suits, it is common for plaintiffs to state claims under both Title VII and the Civil Rights Act of 1866, 42 U.S.C. § 1981. From the plaintiff's standpoint, this is an advisable way to proceed, since § 1981 provides remedies which are not available in Title VII causes of action. *See Johnson v. Railway Express Agency,* 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975). However, 42 U.S.C. § 1981 is not a jurisdictional basis for sex discrimination suits, and therefore, plaintiff's allegations of sex discrimination under 42 U.S.C. § 1981 must be dismissed. This leaves Mrs. Beamon's racial discrimination claim as the only viable § 1981 cause of action asserted in the Complaint.

■ The defendant argues that the statute of limitations applicable to § 1981 employment discrimination cases bars this suit. It is now settled law that the statute of limitations to be applied in federal civil rights actions is "the most appropriate [statute of limitations] provided by state law." *Johnson v. Railway Express Agency,*

specific claims which were presented by the charging party to EEOC. *See Wetzel v. Liberty Mutual Ins. Co., supra,* at 202.

*supra.* What is unsettled, especially in this Circuit, is which of the Pennsylvania statutes of limitations provisions is most applicable to employment discrimination claims.

■ Two courts which have considered this question in the United States District Court for the Eastern District of Pennsylvania have held that the applicable statute of limitations under 42 U.S.C. § 1981 was Pennsylvania's six-year statute of limitations governing actions on contracts (12 P.S. § 31). *Dudley v. Textron, Inc.,* 386 F.Supp. 602 (E.D.Pa.1975); *Jones v. United Gas Improvement Corp.,* 383 F.Supp. 420 (E.D.Pa. 1974). However, in a recent decision, Judge Bechtle of this District expressed his view that the Pennsylvania two-year statute of limitations for tort actions is the most appropriate statute of limitations to apply in § 1981 employment discrimination cases, thus aligning his court with the positions adopted by the United States District Courts in the Western District of Pennsylvania. *Presseisen v. Swarthmore College,* 71 F.R.D. 34 (E.D.Pa., Mar. 25, 1976); *Davis v. U. S. Steel Corp.,* 405 F.Supp. 394, 12 F.E.P. 1 (W.D.Pa.1976); *Wilson v. Sharon Steel Corp.,* 399 F.Supp. 403 (W.D.Pa. 1975). The novel theory advanced by the defendant, which has never been accepted by any court, and which was expressly rejected in *Jones v. United Gas Improvement Corp., supra,* is that the controlling statute of limitations is that found in the Pennsylvania Human Relations Act, as amended, 43 P.S. §§ 951 *et seq.* (PHRA).

Before discussing the applicability of each of these proposed statute of limitations, there are certain practical considerations which should be reviewed, since these factors are relevant in determining the "most appropriate" statute of limitations to be applied in § 1981 employment discrimination cases. These "practical considerations" involve the inter-relationship between discrimination claims brought under both 42 U.S.C. § 1981 and Title VII, and the effect on Title VII actions if the Court were to find that a relatively short statute of limitations is applicable in § 1981 employment discrimination cases. It is apparent that, as a practical matter, if it is determined that a relatively short statute of limitations, say less than three years, is applicable in § 1981 employment discrimination cases, the natural effect of this decision will be to force litigants in employment discrimination cases to file their § 1981 causes of action in the federal courts before EEOC's Title VII-mandated involvement in the case has been completed.[7] It is clear from both the Title VII statutory provisions, and the legislative history of that Act, that Congress intended that individuals should not be required to sue in employment discrimination cases until the administrative review process has been completed. 113 Cong.Rec. 7168 (1972); 118 Cong.Rec. 7563 (1972).[7a]

Defendant's PHRA argument can be disposed of easily. The short answer to Saunders' argument is that there is no provision

---

**7.** From the reported cases, and EEOC's *amicus curiae* brief, it is apparent that EEOC's administrative review of Title VII claims, including conciliation and negotiation efforts, often takes several years to complete. In fact, it appears that meritorious claims presented by charging parties receive considerably more attention from EEOC, and accordingly, it takes additional time to process these claims through the investigation, negotiation and conciliation stages of the EEOC administrative review procedure. If past experience is any indication, a short statute of limitations in § 1981 employment discrimination cases would have the following effect: many Title VII charging parties, especially those with meritorious claims, will have to interrupt the EEOC's negotiation and conciliation efforts by filing a federal § 1981 employment discrimination claim, so as to in-

sure that their federal claim under that statutory provision does not become time-barred. Ironically, it is just this type of interference with EEOC's conciliation efforts which Congress intended to prevent by enacting Title VII. While I recognize that these policy considerations are insufficient reasons for tolling the otherwise applicable statute of limitations in § 1981 causes of action (*Johnson v. Railway Express Agency, supra*), they are factors to be considered in choosing between two equally applicable state statutes of limitations.

**7a.** *See, Campbell v. Burger King,* 10 F.E.P. 1214 (S.D.Fla.1975) (Title VII employment discrimination case dismissed without prejudice, because procedures before the EEOC had not been completed.)

in PHRA which speaks to the particular issue raised in this litigation, that being how much time may elapse between the active employment discrimination and the filing of a civil complaint alleging injuries incurred as a result of the discrimination. The complaint procedure mandated by the PHRA provides that civil actions must be filed "within 90 days after the alleged act of discrimination" (43 P.S. § 959), and if the Commission does not act on the charge within one (1) year, or dismisses the complaint within that time period, the charging party can "bring an action in the courts of common pleas of the Commonwealth based on the right to freedom from discrimination." 43 P.S. § 962(c). Neither § 959 nor § 962(c) specifies the statute of limitations applicable to actions brought pursuant to § 962(c), and my research has failed to disclose any Pennsylvania case law which specifies the applicable statute of limitations for employment discrimination claims. The one-year limitation period found in § 962(c) specifies the earliest point at which a civil suit may be filed, and does not speak to when a discrimination claim becomes time-barred under Pennsylvania law. The 90-day limitation period found in § 959 "clearly is administrative in nature, and cannot be analogized to adversary proceedings instituted in a court of law. . . ."[8] *Jones v. United Gas Improvement Corp., supra.*

As between the statute of limitations applicable to tort actions, and that applicable to contract actions, I am inclined to agree with the cases from this District which have held that employment discrimination claims are primarily actions sounding in contract, governed by the six-year statute of limitations found at 12 P.S. § 31. Those cases in the Western District of Pennsylvania, which have held that employment discrimination claims are essentially tort claims,

have done so without advancing any sound analytical basis for the views expressed, other than to conclude that employment discrimination constitutes ". . . tortious interference with a basic statutory right, the right to equality of treatment in employment." *Wilson v. Sharon Steel Corp., supra* at 408. Admittedly, interference with contractual relations may be characterized as "tortious conduct,"[9] but this does not necessarily mean that the statute of limitations governing torts is the "most appropriate" or "most analogous" statute of limitations. Rather, for the reasons expressed in *Jones v. United Gas Improvement Corp.,* 383 F.Supp. at 431, the "most appropriate" limitations period, as applied to employment discrimination claims, is 12 P.S. § 31:

"Unlike actions brought pursuant to § 1983, which often involve elements that are similar to state causes of action for personal injury, the complaint before us contains allegations of a pervasive system of employment discrimination. The relief sought includes not only damages but also sophisticated equitable remedies . . . To hold that this action with all of its ramifications is similar to a simple tort action to recover damage for personal injury does violence to the language and purpose of § 1981. When Congress left to the courts the task of selecting the state statute of limitations most causally related to the factual situation in a given § 1981 case, they granted this leeway to the courts in reliance upon evenhanded decision in choosing the appropriate statute of limitations to apply . . . Since the general six-year statute applies to contract actions as well as to torts [citations omitted], it is applicable whether the § 1981 action is analogous to a state action based on contract [citations omitted], or to a state action sounding in tort."

**8.** *See also, Waters v. Wisconsin Steel Works of International Harvester,* 427 F.2d 476 (7th Cir. 1970), *cert. denied* 400 U.S. 911, 91 S.Ct. 137, 27 L.Ed.2d 151 (1971) (rejecting similar contentions that the applicable statute of limitations in federal employment discrimination cases brought pursuant to 42 U.S.C. § 1981 should be the 120-day filing period for discrimination claims under the Illinois Fair Employment Practices Act).

**9.** *See,* Prosser, Handbook of the Law of Torts (4th ed) §§ 129, 130.

Since plaintiff's claim of racial discrimination in employment was filed well within the six-year statute of limitations provided for in 12 P.S. § 31, her cause of action under 42 U.S.C. § 1981 is not time-barred.[10]

### IV. Defendant's Motion to Dismiss Plaintiff's Cause of Action Under the Equal Pay Act, 29 U.S.C. § 206(d)

■ The statute of limitations applicable to suits brought under the Equal Pay Act is found at § 6(a) of the Portal-to-Portal Act. That section of the Act specifies that all actions asserted under the Equal Pay Act must "[commence] within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." Since plaintiff has received no wage payments from defendant since June 20, 1972, and since this suit was not filed until August 5, 1975, the defendant argues that her claim under the Equal Pay Act is barred by the statute of limitations found in § 6(a) of the Portal-to-Portal Act.

It appears likely that the defendant ultimately will prevail on this issue, but the claim cannot be disposed of on a motion to dismiss. There may be facts, presently unknown to the Court, which would warrant a finding that Saunders should be estopped from raising this defense, or that there are equitable considerations which warrant tolling the statute of limitations. *Reeb v. Economic Opportunity Atlanta, supra,* at 928. If such facts exist, they will no doubt come to light during the course of the discovery process. However, if after the discovery process is completed there is no evidence which would support either an "estoppel" or "tolling" theory, Saunders can always raise

this identical issue in a motion for summary judgment. At any rate, this motion to dismiss is an inappropriate vehicle for raising this issue.

### V. Saunders' Motion to Dismiss Plaintiff's Conspiracy Claim Under 42 U.S.C. § 1985(3)

Plaintiff's Amended Complaint, filed on February 4, 1976, includes a claim that Saunders, and three individual defendants employed by Saunders, engaged in a conspiracy to violate plaintiff's rights, in violation of 42 U.S.C. § 1985(3). The defendants have moved to dismiss all or part of this conspiracy allegation, arguing: (1) that the § 1985(3) claim is barred by the applicable statute of limitations; (2) that there can be no conspiracy within the meaning of § 1985(3), because the alleged conspirators are agents of the same corporate entity; and (3) that § 1985(3) has no applicability in sex discrimination cases.

■ The motion to dismiss the § 1985(3) claim will be denied. First, for the reasons set forth in Part III of this Memorandum, I find that the proper statute of limitations to apply in § 1985(3) claims, based on alleged employment discrimination, is the six-year statute of limitations governing actions in assumpsit (12 P.S. § 31). Since this conspiracy claim was brought within six years, it is not time-barred. Second, while I recognize that the lower courts have taken inconsistent positions with respect to the question of whether officials of a single corporation can conspire with one another,[11] I am not disposed to dismiss the § 1985(3) claim at this point in the proceedings. Presentation of evidence on questions such as the number of acts of discrimination, and the number of

---

**10.** *See, Yatzor v. Allen,* 365 F.Supp. 875 (W.D. Pa.1973), aff'd 503 F.2d 1400 (3d Cir.1974) (12 P.S. § 31 held to be the "most appropriate" statute of limitations in civil rights suit challenging unlawful employment discharge).

**11.** The following cases have found that an actionable § 1985(3) claim is presented by naming corporate officials as individual defendants along with the corporation itself. *Rankin v. University of Pa.,* 386 F.Supp. 992, 1005 (E.D.

Pa.1974); *Jackson v. University of Pittsburgh,* 405 F.Supp. 607 (W.D.Pa.1975); *Johnson v. University of Pittsburgh,* C.A. No. 73–120 (W.D.Pa.1975). However, a number of courts have taken a contrary position. *See White v. Motor Freight Express, Inc.,* C.A. No. 74–3149 (E.D.Pa.1975); *Dombrowski v. Dowling,* 459 F.2d 190 (7th Cir.1972); *Cole v. University of Hartford,* 391 F.Supp. 888 (D.Conn.1975); *Milburn v. Blackfrica Promotions, Inc.,* 392 F.Supp. 434 (S.D.N.Y.1974).

business entities or individuals involved, should be taken before undertaking the ambitious task of attempting to define the constitutional scope of § 1985(3). *See, Jackson v. University of Pittsburgh, supra,* at 613. Third, it is now clear that plaintiff's allegations of sex discrimination are included within the scope of § 1985(3). *See, Milner v. National School of Health Technology,* 409 F.Supp. 1389 (E.D.Pa.1976) (Lord, C. J.); *Cohen v. Illinois Institute of Technology,* 524 F.2d 818 (7th Cir.1975).